IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES J. FENTON

                    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

No. 3:13-CV-01455-HZ

OPINION & ORDER

Philip W. Studenberg
PHILIP W. STUDENBERG, ATTORNEY AT LAW, P.C.
230 Main Street
Klamath Falls, OR 97601

    Attorney for Plaintiff

S. Amanda Marshall
United States Attorney, District of Oregon
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97201

1 - OPINION & ORDER

Kathy Reif
SOCIAL SECURITY ADMINISTRATION
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff James Joseph Fenton III brings this action under the Social Security Act ("Act"), 42 U.S.C. § 405(g), for judicial review of the Commissioner of Social Security's final decision denying his claim for supplemental security income under Title XVI of the Act. For the reasons below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

    Mr. Fenton was born in April of 1960. Tr. 8. He has a high school education, and formerly worked as a master mechanic. Tr. 9. Mr. Fenton filed his most recent application for Title XVI benefits on July 20, 2010 and alleged a disability onset date of February 15, 2000. Tr. 53, 285. He has applied for benefits several times before and been denied. He first filed a Title II application in 2002. Administrative Law Judge ("ALJ") James Caulfield denied that application in February of 2005. Mr. Fenton appealed and subsequently filed an application for supplemental security income ("SSI") under Title XVI. Tr. 53. After the Social Security Administration ("SSA") Appeals Council denied his request for review, Mr. Fenton brought suit in federal court. Tr. 53. The District Court remanded the Title II case, which was then consolidated with the Title XVI application. In January of 2008, ALJ William P. Horton denied the concurrent claims. Tr. 53.

2 - OPINION & ORDER

In a lengthy decision, ALJ Horton found Mr. Fenton could perform light work limited to simple, routine tasks that did not require interacting with the general public. Tr. 114. While that residual functional capacity ("RFC") prevented Mr. Fenton from performing his past work as a mechanic, the ALJ found there were significant jobs in the national economy he could perform Tr. 132–33. Accordingly, ALJ Horton found Mr. Fenton was not disabled between December 31, 1996, and December 31, 2002, as relevant to his Title II claim, and not disabled between May 2005 and January 25, 2008, as relevant to his Title XVI application. Tr. 133. Mr. Fenton did not appeal.

On June 26, 2010, Mr. Fenton filed another application for Title II disability benefits. Since Title II requires a claimant to prove disability on or before his insured status expired—in Mr. Fenton's case, December 31, 2002—that application was denied as res judicata. Tr. 53; Def. Brief at 3.

On July 20, 2010, Mr. Fenton protectively filed his current Title XVI application, alleging disability beginning February 15, 2000. That application was denied on November 20, 2010, and again on reconsideration on January 28, 2011. After a hearing, ALJ Michael J. Kopicki notified Mr. Fenton on April 16, 2012, that his claim was denied. Tr. 75. The SSA Appeals Council denied Mr. Fenton's request for review on July 8, 2013, making the ALJ's decision the Commissioner's final decision that is now before the court on appeal. Tr. 44.

## FACTUAL BACKGROUND

The parties are familiar with the medical evidence and other evidence in the record. Accordingly, I will repeat evidence only as necessary to explain my decision.

3 - OPINION & ORDER

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding administrative law judge determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimants RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant

number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## THE ALJ'S DECISION

Before beginning the five-step sequential analysis, ALJ Kopicki analyzed two preliminary issues. First, ALJ Kopicki examined whether ALJ Horton's 2008 decision, which Mr. Fenton did not appeal, was "final and binding with respect to [Fenton's] prior application for benefits." Tr. 54. Mr. Fenton said his attorney had somehow "offended the court" by writing a letter to ALJ Horton stating he was aware that Fenton's claim would be denied. Tr. 54. Mr. Fenton explained he did not appeal because he was "highly depressed" and "did not know how to handle this case." Tr. 54. He testified that he thought his July 2010 application would reopen his prior claims. Tr. 54. ALJ Kopicki found no basis to reopen the prior claims because Mr. Fenton failed to show that he "lacked the mental capacity to understand the procedures for requesting review and, perhaps even more significantly, he had legal representation at the time . . . ." Tr. 54

Second, ALJ Kopicki analyzed whether SSA Acquiescence Ruling 97-4(9) and the related Ninth Circuit decision in Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), required giving res judicata effect to ALJ Horton's findings of Fenton's RFC, education, and work experience. ALJ Kopicki found the Acquiescence Ruling did not apply because Fenton's impairments had changed since ALJ Horton's decision. Tr. 55. Accordingly, ALJ Kopicki made a new decision at step two regarding Fenton's RFC. See Tr. 55, 57

5 - OPINION & ORDER

At step one, the ALJ found Fenton had not engaged in substantial gainful activity since the SSI application date, July 20, 2010. Tr. 57. Finding 1. Although Fenton testified and other evidence suggested that he engaged in a wide variety of activities, including work as a "freelance mechanic," caregiver, marijuana and strawberry cultivator, and "land agent," the ALJ concluded that, without further evidence, these were not substantial gainful activities. Id. At step two, the ALJ found Fenton had the "following medically determinable impairments: mild lumbar and cervical degenerative disc disease . . . fibromyalgia . . . marijuana abuse . . . and Cluster B traits (i.e. a personality disorder) . . . ." Id., Finding 2. (citations omitted). At step three, the ALJ found Fenton's impairments did not meet or equal the requirements of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 59, Finding 3. Next, the ALJ assessed Fenton's RFC:

> [C]laimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk with normal breaks for six out of eight hours, and sit with normal breaks for six hours in an eight-hour workday. He can no more than occasionally stoop, kneel, crouch, crawl, or climb ladders, ropes or scaffolds; he can occasionally climb ramps and stairs and he can frequently balance. He must avoid concentrated exposure to vibration, dangerous machinery, and unprotected heights. The claimant can understand and implement simple, routine tasks in a non-public setting. There are no other physical or mental limitations.

Tr. 61, Finding 4. At step four, the ALJ found that Fenton could not perform his past relevant work. Tr. 69, Finding 5. At step five, the ALJ found Fenton was not disabled because a significant number of jobs existed in the national economy that he could perform, including representative occupations such as nut and bolt assembler and basket filler. Tr. 70, Finding 9.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g)(2012); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

## DISCUSSION

### 1. Res Judicata Effect of Prior Applications

Mr. Fenton first argues that ALJ Kopicki failed to review his July 2010 application de novo, and instead improperly relied on the evidence and reasoning underlying ALJ Horton's 2008 decision denying Fenton's prior application for SSI benefits. Plaintiff's Opening Brief ("Pl. Br.") at 1–3. "The ALJ . . . chose to refer to a claim that is held, without dispute, as res judicata . . . . The ALJ asserts that he consider[ed] Chavez and the prior ALJ's decision in order to conclude that [Fenton] has not been under a disability . . . since July 20, 2010, the date the SSI application was filed." Pl. Br. at 2–3.

Mr. Fenton's argument misinterprets ALJ Kopicki's rulings and the operation of administrative res judicata in the Social Security context. ALJ Kopicki made two distinct rulings on the res judicata effect of ALJ Horton's 2008 decision: 1) ALJ Horton's 2008 decision was the "final decision" on Fenton's prior applications, and 2) that Fenton's impairments had sufficiently

7 - OPINION & ORDER

changed since the 2008 decision to overcome the presumption of continuing non-disability. See Tr. 54–55.

First, ALJ Kopicki analyzed whether Fenton's July 2010 application effectively re-opened his prior applications and found there was no basis to re-open those claims. Tr. 54. In essence, this first ruling held that ALJ Horton's 2008 decision precluded any further consideration of whether Fenton was actually disabled during the dates relevant to the 2008 decision—between December 31, 1996, and December 31, 2002, for his Title II claim, and between May 2005 and January 25, 2008, for his Title XVI claim. See Tr. at 54.

Second, ALJ Kopicki analyzed what, if any, res judicata effect the 2008 decision had on Mr. Fenton's 2010 application. A prior final determination that a claimant is not disabled creates a presumption of non-disability. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). A claimant can overcome that presumption by showing "changed circumstances," such as a change in severity of impairments or a change in age category. Chavez, 844 F.2d at 693. ALJ Kopicki found Mr. Fenton's mental impairments had sufficiently changed, and therefore the presumption of continuing non-disability did not apply. Tr. 54, 57. In other words, ALJ Kopicki was not bound by ALJ Horton's finding that Fenton was not disabled; ALJ Kopicki was free to consider new evidence, make a fresh determination of Fenton's RFC, and judge anew whether Fenton had been disabled since the 2008 decision. The ALJ's ruling on this point did not, as Fenton alleges, form the basis of his ultimate conclusion that Fenton was not disabled during the relevant twelve-month period between July 2009 and July 2010. Pl. Br. at 2–3. In fact, the ALJ found in Fenton's favor on this issue by declaring the 2008 decision did not create a presumption of non-disability. ALJ Kopicki was required by law to examine the res judicata effect of the 2008 decision, and therefore the court finds no error in the ALJ's res judicata analysis.

Mr. Fenton also argues that ALJ Kopicki improperly relied on evidence from the 2008 decision to assess his new 2010 claim. But ALJ Kopicki utilized the 2008 decision in Mr. Fenton's favor by finding that he had medically-determinable mild lumbar and cervical degenerative disc disease. Tr. 57.  ALJ Kopicki relied on ALJ Horton's examination of x-rays and an MRI from between 2002 and 2004 to find that Mr. Fenton continued to suffer from those impairments, despite a lack of objective medical evidence from the relevant July 2009 to July 2010 period. ALJ Kopicki "liberally" construed the evidence in the record in Mr. Fenton's favor by "assuming . . . these conditions persist[ed]" and included a limitation to light work in Mr. Fenton's RFC. Tr. 57, 63. Mr. Fenton's argument that such a generous reading of the record in his favor somehow prejudiced his 2010 claim is meritless.

Finally, Mr. Fenton's criticism of the ALJ for "ignoring" SSA regulations governing the earliest month the SSA can pay benefits is inapposite. Pl. Br. at 2 (citing 20 C.F.R § 416.335)). Mr. Fenton seems to argue the ALJ should have analyzed a different twelve-month period when assessing his 2010 claim. However, SSA regulations clearly state the ALJ must analyze the medical history for the twelve months prior to a claimant's application date to determine whether he or she was disabled. 20 C.F.R. 416.912(d). That analysis is wholly unrelated to Mr. Fenton's cited regulation, which addresses the earliest date at which the SSA can distribute benefit payments.

**2. Fibromyalgia**

Mr. Fenton challenges the ALJ's evaluation of his fibromyalgia. His primary attack on the ALJ's decision is that ALJ Kopicki "failed to explain why SSR 99-2p did not apply to [Fenton]." SSR 99-2p is a now-rescinded ruling that addresses Chronic Fatigue Syndrome

("CFS"), not fibromyalgia. <u>Titles II & XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS)</u>, SSR 99-2P, 1999 WL 271569, <u>available at</u> http://www.socialsecurity.gov/ OP_Home/rulings/di/01/SSR99-02-di-01.html (hereinafter SSR 99-2p). In fact SSR 99-2p explicitly distinguishes between CFS and fibromyalgia. <u>See</u> SSR 99-2p n.3 (explaining that while there is "considerable overlap of symptoms between CFS and Fibromyalgia," each condition has distinct "medically determinable" criteria). Moreover, there is nothing in the record that shows any medical source has ever diagnosed Mr. Fenton with CFS; in fact, the word "fatigue" does not appear in any of the medical reports in the record. Mr. Fenton's application for benefits did not ask the ALJ to analyze whether CFS was a medically determinable impairment. Simply put, the ALJ did not apply SSR 99-2p to Mr. Fenton's application because this was not a CFS case.

Mr. Fenton also states that the "ALJ also gave some weight to third party testimony, [Fenton's] ex-wife's statement that described the . . . symptomology for [CFS]." Pl. Br. at 3. The court agrees with Mr. Fenton's reading of the record—the ALJ gave "limited weight" to her lay testimony. Tr. 67. But Mr. Fenton does not challenge the ALJ's weighing of that evidence or argue that the ALJ committed an error in analyzing his ex-wife's testimony. Accordingly, the court cannot find the ALJ erred in analyzing the lay testimony.

Mr. Fenton's objections to the ALJ's analysis of his fibromyalgia are not well founded. Accordingly, the court cannot find error with the ALJ's evaluation of Mr. Fenton's fibromyalgia.

**3. Medical Evidence**

Mr. Fenton asserts that ALJ Kopicki failed to give proper weight to the opinion of consulting physician Dr. Jon McKeller.[1] There are three sources of medical opinion evidence in

---

[1] Mr. Fenton mentions the opinion of Dr. Michael Villanueva, but does not allege the ALJ erred in evaluating Dr. Villanueva's report. In an abundance of caution, the court finds that, even if Mr. Fenton

10 - OPINION & ORDER

Social Security cases: treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r of Soc. Sec. Admin, 574 F.3d 685, 692 (9th Cir. 2009) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ can reject the uncontroverted opinion of a treating or examining physician only for "clear and convincing reasons" supported with substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if a treating or examining doctor's opinion is contradicted by another doctor, the ALJ can reject it only by providing "specific and legitimate reasons" that are supported by substantial evidence. Id.

    Dr. McKeller met with Mr. Fenton in October of 2010, and opined that he could stand for thirty minutes without sitting, walk for thirty minutes without sitting, and sit for one hour without needing to change position or lie down for three to four hours per day. Further, Dr. McKellar stated that Mr. Fenton could life and carry ten pounds regularly and twenty pounds occasionally. Tr. 376. ALJ Kopicki gave Dr. McKeller's opinion "little if any weight." Tr. 68. Although Dr. McKeller's opinion was based on the diagnoses of a cervical disc injury, fibromyalgia, and status post Hepatitis C, the ALJ found that "Dr. McKeller acknowledge[d] that the cervical spine condition is only 'reported,' he reviewed no x-rays and his examination was inconsistent with radiculopathy." Tr. 68, 376. Furthermore, the ALJ explained, Dr. McKeller "did not fully review medical records; he noted only some 'old medical records' and cited only the diagnoses," which meant Dr. McKeller was unaware of Mr. Fenton's reports to his other doctors that his pain was well controlled with medication. Tr. 68. Finally, Dr. McKeller

---

had challenged the ALJ's evaluation of Dr. Villanueva's opinion, that argument would fail. Dr. Villanueva noted that Mr. Fenton would have difficulty with concentration and interacting with others at ease, and accepting blame. Tr. 69, 370–71. ALJ Kopicki incorporated those limitations in the RFC by finding that Mr. Fenton could "perform simple routine tasks with no public contact." Where the ALJ incorporates a doctor's recommended limitations into the RFC, there is nothing to resolve. See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010).

11 - OPINION & ORDER

prescribed limitations, especially the need for Mr. Fenton to lie down for several hours a day, did not seem "reasonably related" to his impairments. Tr. 68.

The ALJ concluded, therefore, that Dr. McKeller relied on Mr. Fenton's subjective complaints when writing his opinion about Mr. Fenton's limitations. An ALJ can reasonably discount a physician's opinion that is based on the claimant's subjective characterization of his or her symptoms if the ALJ finds the claimant not entirely credible. <u>Bray v. Comm'r of Soc. Sec. Admin</u>, 554 F.3d 1219, 1228 (9th Cir. 2009). The ALJ evaluated Mr. Fenton's credibility using the required two-step analysis, and found him not entirely credible. Tr. 63. Mr. Fenton does not challenge the ALJ's finding on credibility and the court is therefore unable to find error in the ALJ's analysis.

ALJ Kopicki set out a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation of the evidence, and explained the reasons why he discounted Dr. McKeller's opinion. <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation omitted) (explaining an ALJ can reject a medical expert's opinion by setting forth a detailed explanation of the facts and conflicting evidence, stating his interpretation thereof, and making findings). Accordingly, I find the ALJ did not err in giving little weight to Dr. McKeller's opinion.

### 4. Listed Impairments

Finally, Mr. Fenton summarily asserts that "he meets or has the equivalent of Listing 1.04, <u>Disorders of the Spine</u>; 12.06, <u>Anxiety-related disorders</u>; and 11.14, <u>Peripheral neuropathies</u>, and Chronic Fatigue Syndrome, pursuant to SSR 99-2p." Pl. Br. at 4. At step three, the ALJ determines whether a claimant's impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity."

Bowen, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  At step three, the burden is on the claimant to produce medical evidence sufficient to establish each of the characteristics for the listed impairment. Bowen, 482 U.S. at 146 n.5.

Mr. Fenton does not offer any argument or theory how his impairments meet any of his cited listings. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding the ALJ's listing analysis was not erroneous where claimant "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment."). Moreover, his "generalized assertion[s] of functional problems" is not enough to establish disability at step three. Tackett, 180 F.3d at 1100. Mr. Fenton cannot meet his burden at step three by simply declaring that he meets the listed impairments. He must point to objective medical evidence in the record that shows he meets all of the medical prerequisites for each listing. Because he failed to do so, the court finds the ALJ did not err at step three.

## CONCLUSION

For the reasons stated, the Commissioner's decision is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Dated this 6 day of Aug, 2014.

_____
MARCO A. HERNÁNDEZ
United States District Judge

13 - OPINION & ORDER